# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

VINCENT BURNELL,

     Plaintiff,

vs.                            CASE NO. CV-04-J-3407-NW

CLARK PULLEY, INC.,

     Defendant.

## <u>MEMORANDUM OPINION</u>

Currently pending before the court is the defendant's motion for summary judgment (doc. 23), evidence in support of said motion and a memorandum of law (docs. 24 and 25).  The plaintiff filed a brief opposing summary judgment with affidavits attached (doc. 34) as well as the additional affidavit of the plaintiff (doc. 33) in opposition to said motion. Having considered the parties submissions, and finding that the plaintiff's opposition to the defendant's motion is insufficient to create any genuine issue for trial, the court declines to withhold its ruling in order for the defendant to submit further argument as to why it should prevail.

Plaintiff commenced this action by filing a complaint alleging defendant discriminated against him on the basis of race (black) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., ("Title VII") and 42 U.S.C. § 1981.  Upon consideration of the pleadings, memoranda and evidentiary submissions, the court concludes that the motion for summary judgment is due to be

granted as no genuine issues of material fact remain and the defendant is entitled to judgment in its favor as a matter of law.

## FACTUAL BACKGROUND

In the light most favorable to the plaintiff, the court finds the undisputed facts of this case to be as follows:

Defendant manufactures pulleys for lawn and garden equipment. Affidavit of Moore, ¶ 1.[1] Because of the seasonal nature of demand for these products, defendant hires temporary employees as needed to supplement its full-time work force. *Id*, ¶ 3; Moore depo. at 20. Plaintiff was hired through temporary agency Action Staffing to work as an operator in defendant's press department on December 9, 2003. Moore affidavit, ¶ 7; plaintiff depo. at 54. He experienced no discrimination as a temporary employee.[2] Plaintiff depo. at 61.

A full-time fork lift operator position came open on or about February 5, 2004. Moore affidavit, ¶ 9; Plaintiff depo. at 62. Plaintiff and other interested individuals signed the sheet on which the job was posted to indicate their interest. Plaintiff depo.

---

[1]Terry Moore is Vice President and General Manager for defendant. Moore depo. at 11.

[2]The plaintiff submits the affidavit of Selma Bates in opposition to the defendant's motion for summary judgment. She asserts that she was employed as a temporary employee with defendant for a year, until she voluntarily resigned. She asked why she was not made a permanent employee and was told that paint line employees were temporary. Therefore, she resigned. Affidavit of Selma Bates (attached to doc. 34). After her resignation, a white employee on the paint line was assigned a permanent position. *Id*. The court notes only that Ms. Bates filed her own lawsuit, her affidavit is executed in that lawsuit, and her allegations have no relationship to those of the plaintiff before this court.

at 76-77, 81; exhibit 4 to plaintiff depo.  He asked for and received an application from Chuck Kille, the plant supervisor.[3]  Plaintiff depo. at 61, 75, 86-87; exhibit 3 to plaintiff depo.  On or about February 26, 2004, plaintiff was selected for this position by Kille and Terry Moore, the General Manager.[4]  Moore affidavit, ¶¶ 1, 9; plaintiff depo. at 62, 87-88, 92.  He already held a fork-lift operator's certificate, having been certified in approximately 1992.  Plaintiff depo. at 23-25, 27-29, 42, 91.  The other six individuals who signed the posted notice for this position are white.  Moore affidavit, ¶ 9.  The plaintiff asserts he was the only black fork lift driver, but does not know whether there was a black fork lift driver before him or since.  Plaintiff depo. at 174-175, 191-192; *see* Moore depo. at 85 (stating he does not remember any other black fork lift driver at defendant plant at any time).

Over the next month during which plaintiff worked as a fork lift driver for defendant, he dropped steel coils and spilled a hopper full of bolts on several occasions.  Moore affidavit, ¶ 10; plaintiff depo. at 107, 113.  The steel weighed up to five thousand pounds per load.  Plaintiff depo. at 101.  It bent when it hit the floor.

---

[3]Although he is referred to as "Chuck Kelly" throughout the depositions submitted to the court, his last name is spelled "Kille" on the defendant's pleadings and the court has used that spelling here.

[4]The plaintiff asserts it was difficult for him to get hired as a regular employee because he had to tell his supervisors that he had been offered another job elsewhere making more money. Plaintiff depo. at 92-93.  However, he then states that once he told Chuck Kille he wanted the fork lift driver position, it was not difficult to actually get hired because Kille went and got the application right away.  *Id.*, at 93. Prior to this, he never asked to be made a regular, full-time employee.  *Id.*, at 93-94.

*Id.*, at 108.  The plaintiff states Mike Pace, his direct supervisor, Chuck Kille and Terry Moore never said anything to him about dropping the hopper or steel, even though they were standing nearby on at least one occasion.  *Id.*, at 110-111; see also Moore depo. at 81.  However, he does say that Mike Pace told him that he could not pick up that much steel with the forklift, because the forklift could not hold it.  Plaintiff depo. at 111.  The plaintiff also testified that, on the occasion he dropped the steel, it sounded "[l]ike a bomb" and Chuck Kille and Mike Pace came.  *Id.*, at 185-186.

The plaintiff asserts other employees told him he was doing a good job because everybody had dropped steel and spilled hoppers.[5]  Plaintiff depo. at 114.  However, he did not see anyone else drop anything.  *Id.*, at 124-125.  A white fork lift driver crashed into him though, and was not disciplined.  *Id.*, at 125.  However, plaintiff did not report this incident.  *Id.*, at 126.

On March 22, 2004, the plaintiff was terminated due to management's concerns that the plaintiff was a threat to the safety of others.  Moore affidavit, ¶ 10; plaintiff depo. at 115-116; Moore depo. at 105-108.  He was told he was terminated because they were afraid he was going to hurt someone.  Plaintiff depo. at 117.  Moore

---

[5]By affidavit, the plaintiff asserts that "[e]veryone that I worked with said that I was doing a good job and that I had not done anything on the forklift that others had not done."  Affidavit of Burnell, attached to doc. 34.  Unfortunately, the plaintiff cannot testify as to what "everyone he worked with" said.  He has provided no evidence, such as an affidavit from another employee, as to his work performance in relation to other forklift drivers.

suggested that plaintiff return to the temp agency and see if he could be reassigned to his previous shift. *Id*. The plaintiff disputes whether he was likely to hurt someone and asserts other fork lift drivers were more likely to cause an accident than he was. *Id*., at 118-119, 126, 132, 173.  However, he does not know that any manager ever witnessed any of these unsafe practices. *Id*., at 126-127.  The plaintiff was also told that he was "too slow." *Id*., at 141, 180.  While plaintiff disputes this, he admits that if he did not get his work done, it would hold up production. *Id*., at 180.  The plaintiff asserts this was because he was given greater job duties and responsibilities than the white fork lift drivers. *Id*., at 180-181.  He states "I guess I was supposed to keep up with that by being there a month and I couldn't do it." *Id*., at 181.  However, he also explains that no one else wanted that particular job because it was too much work.[6] *Id*., at 182, 203-204.

The plaintiff was also told that he was not allowed to use his cell phone during work hours.  Plaintiff depo. at 119-120.  The plaintiff stated he had not known that and Chuck Kille had not previously said anything to him about using his cell phone at work. *Id*., at 120-121.  The plaintiff believes this was discriminatory because he had seen other employees talking on cell phones, but could not name anyone specifically other than PJ, who is also black. *Id*., at 122-123.  However, plaintiff also

---

[6]The plaintiff actually seems to be complaining that the particular position he filled had greater responsibilities than other fork lift driver positions, regardless of the individual who filled the position.  In other words, the greater responsibilities were a function of the position, not the plaintiff's race.

5

stated that PJ only used his phone during breaks.  *Id*., at 123.  Everyone else he saw on a cell phone was white.  *Id*.

Moore asserts that he did not give the plaintiff any prior warning before he was terminated.  Moore depo. at 101, 103.  However, he claims that both Kille and Pace said that they had informed plaintiff that his work was deficient.  *Id*., at 101.  In turn, Pace and Kille reported to Moore that the plaintiff was careless, dangerous, slow, and would be in other departments talked to a female employee, unrelated to any work duties he had.  *Id*., at 101-102.

Approximately one month later, the opening caused by the plaintiff's termination was filled by the same individual who had voluntarily left, causing the job opening filled by plaintiff.[7]  Moore affidavit, ¶ 11; Moore depo. at 111-112.  This individual is a white female.  Moore affidavit, ¶ 11.  Therefore, the plaintiff asserts his termination was based on his race.  Plaintiff depo. at 127-128, 130-131.  Additionally, he believes he had not been performing the job long enough to be trained, and therefore assumes his race was the reason for his termination.  *Id*., at 131.  Plaintiff further states that he does not know of any incidence of black employees being mistreated while employed by defendant other than himself, and he was mistreated by being fired for no reason.  *Id*., at 171-172.

---

[7]This individual apparently assumed the identical job responsibilities, which plaintiff described as more extensive than any of the other fork lift drivers.  Plaintiff depo. at 180-182.

When he began as a permanent employee, the plaintiff was given an employee handbook. Plaintiff depo. at 94, 98-99. Although he had not read the handbook, he agreed it was probably in the folder he was provided. *Id*., at 95-96. The plaintiff agreed that, as a fork lift driver, he was required to obey safety rules. *Id*., at 100-101.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the

'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R. Civ.Pro. 56(e).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro.  56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249.  The nonmovant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v.  Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party.  *See Adickes v. SH. Kress & Co.*, 398 U.S. 144, 157 (1970).  The substantive law will identify which facts are material and which are irrelevant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id*. at 249.  The basic issue before the court on a motion for summary judgment is "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252.

## LEGAL ANALYSIS

Plaintiff asserts that the above facts constitute race discrimination under 42 U.S.C. § 2000e and 42 U.S.C. § 1981. Plaintiff phrases the alleged discrimination in terms of disparate impact and disparate treatment. Thus, plaintiff does not directly state a claim for wrongful termination.

**Disparate Impact:**

Whether this case is pursuant to 42 U.S.C. § 2000e or § 1981, the same substantive proof is required and analyzed under the same framework. *See e.g., Bass v. Board of County Com'rs, Orange County, Florida*, 256 F.3d 1095, 1109 n. 4 (11th Cir.2001); *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998). Disparate impact theory "prohibits neutral employment practices which, while non-discriminatory on their face, visit an adverse, disproportionate impact on a statutorily-protected group." *EEOC v. Joe's Stone Crab,* 220 F.3d 1263, 1274 (11th Cir.2000). The plaintiff asserts solely that "[d]efendants (sic) hiring practices reflect a statistical disparity as to the ratio of hired white applicants as to black applicants with a low ratio of black employees maintaining their permanent status, after being employed." Complaint, ¶ 10. The plaintiff has provided no evidence of this claim. No evidence as to the number of black applicants, the number of white applicants, or the

percentage of either applicant employed has been submitted into evidence.  The plaintiff's own testimony was that "the ones that are there, they stay there."  Plaintiff depo. at 144.

To establish a prima facie case of disparate impact discrimination, a plaintiff must demonstrate 1) a specific, facially-neutral employment practice, 2) a significant statistical disparity in the racial composition of employees benefitting from the practice and those *qualified* to benefit from the practice; and 3) a causal nexus between the practice identified and the statistical disparity. *Lee v. Florida, Department of Children & Family Services,* 135 Fed.Appx. 202, 204-205 (11th Cir.2005), citing *Joe's Stone Crab,* 220 F.3d at 1274.  *Cooper v. Southern Co.*, 390 F.3d 695, 716-717 (11th Cir.2004).  In order to satisfy the third, critical requirement, a plaintiff "must offer statistical evidence of a kind and degree sufficient to show that *the practice in question* has *caused* the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Id.* at 724 (citations omitted, emphasis in original.

As stated above, the plaintiff has failed to produce any evidence of a disparate impact.  The plaintiff has identified no "specific, facially-neutral employment practice" nor any statistical disparity in the racial composition of employees benefitting from the practice and those *qualified* to benefit from the practice.  In fact, the plaintiff has presented the court with no legal argument at all in his opposition to

the defendant's motion for summary judgment.

Even if the court could find evidence supporting this claim, the plaintiff must produce evidence that the defendant's proffered reasons were "a coverup for a ... discriminatory purpose." *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir.1999) ("we are not in the business of adjudging whether employment decisions are prudent or fair. Instead, [its] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision"). However, in response to the defendant's motion for summary judgment, the plaintiff merely reiterates, in affidavit form, the deposition testimony submitted by the defendants, then concludes, still within his affidavit that, "I believe Clark Pulley gives white employee's (sic) better opportunities to get acquainted with the various types of machinery that are used in the work place, however, if you are black you are not afforded the same playing field.  The white female employee that replaced me made the same mistakes that I did, however, she was allowed to make those mistakes and she still remains at Clark Pulley."  Burnell affidavit (doc. 33).  Setting aside that the plaintiff's beliefs are not evidence, that the plaintiff did not submit any evidence that the white female made the same mistakes as he did, and that this entire paragraph is not appropriate for inclusion in an affidavit, the court finds that plaintiff's speculation does not contradict the defendant's legitimate, nondiscriminatory reason for terminating the plaintiff.

11

The plaintiff claims he must have been terminated because of his race, but agrees that he could not keep up with the production needs and that he dropped loads with the potential to seriously harm other employees. Considering all of the evidence, the court finds that the plaintiff's theory that he must have been terminated because he was black is insufficient to cast doubt on the defendant's proffered nondiscriminatory reasons, sufficient to allow a reasonable factfinder to determine that these reasons were "not what actually motivated its conduct." *Cooley v. Great Southern Wood Preserving,* 138 Fed.Appx. 149, 158-159 (11th Cir.2005); citing *Silvera*, 244 F.3d 1253, 1258 (11th Cir.2001). Because of this complete lack of evidence, the court will dismiss this claim.

**Disparate Treatment**

A plaintiff establishes a prima facie case of disparate treatment by showing that he was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." *Hendrix v. Snow,* 2006 WL 288099, *8 (11th Cir.2006), citing *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1087 (11th Cir.2004). To establish a *prima facie* case for disparate treatment, a plaintiff may produce circumstantial evidence showing that he was "(1) a member of the protected class; (2) qualified for the position; (3) subjected to adverse employment action; and (4) replaced by a person outside the protected class or suffered from disparate treatment because of membership in the

12

protected class." *Apodaca v. Secretary of Dept. of Homeland Sec.*, 2006 WL 39235, *2 (11th Cir.2006). See also *Maynard v. Bd. of Regents of the Univs. of the Fla. Dep't of Educ.,* 342 F.3d 1281, 1289 (11th Cir.2003).

After the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions. *Gerwens,* 874 F.2d at 1538. "[T]he plaintiff then must establish that the employer's articulated reason was a pretext for discrimination ⋯ the plaintiff retains the ultimate burden of proving by a preponderance of the evidence the existence of purposeful discrimination." *Crawford v. Chao,* 2005 WL 3303998, *2 (11th Cir.2005).

The plaintiff is a member of a protected class, he held a certificate stating he was qualified to operate a fork lift, he was terminated which is an adverse employment action, and he was ultimately replaced by someone outside his protected class. Therefore, the defendant must offer a legitimate, non-discriminatory reason for plaintiff's termination. Defendant did so, stating that the plaintiff was dangerous to others in his operation of the forklift. The plaintiff admits that each of the incidents about which the defendant complained actually occurred. The plaintiff further admits that he was too slow on the forklift to keep up with production demands. Although the plaintiff asserts the real reason for his termination was his race, he has failed to produce any evidence that the defendant's reasons were pretextual. To prevail on a motion for summary judgment, mere conclusory allegations and assertions will not

suffice." *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11ᵗʰ Cir.1990). "[A] reason cannot be proved to be "a pretext for discrimination" unless it is shown *both* that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993) (emphasis in the original) (internal quotations omitted).  As noted above, the plaintiff responds to the defendant's motion for summary judgment solely by two of his own affidavits, a summary of deposition testimony already before the court, and the affidavit of another employee, submitted in her case, who resigned from defendant's employ after a year because she was not made permanent.  None of this is sufficient to refute the defendant's stated reasons for terminating the plaintiff.  Also as noted above, the plaintiff provides the court no legal argument in response to the defendant's motion for summary judgment.[8]

As such, the court finds that the plaintiff's claims against the defendant are due to be dismissed as a matter of law.

Furthermore, the plaintiff was hired and fired by the same individuals.  Moore depo. at 100.  When the same actor hires a person within a protected class, and then later fires that same person, it is difficult to impute to him an invidious motivation

---

[8]The failure to brief specific claims has been deemed an abandonment of those claims by the plaintiff.  *See e.g., Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1284 (11ᵗʰ Cir.2003); *see also Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11ᵗʰ Cir.2001). However, the court having already determined that the plaintiff could not prevail on the merits of his claims, only notes the plaintiff's complete failure to brief the specific claims upon which he filed suit.

14

that would be inconsistent with the decision to hire.  *Curtis v. Teletech Customer Care Management (Telecommunications), Inc*., 208 F.Supp.2d 1231, 1243 (N.D.Ala.2002), citing *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 137 (2nd Cir.2000).

<u>**CONCLUSION**</u>

The court having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendant's motion for summary judgment is hereby **GRANTED**.  The plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**DONE** and **ORDERED** this the 22nd day of February, 2006.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

15